UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |  |
|---|---|---|
| CHERYL MARTIN and ROBERT MARTIN, *individually, and on behalf of all others similarly situated*, | ) ) ) ) | Civil No. 15-46-ART |
| Plaintiffs, | ) ) |  |
| v. | ) ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, *Acting Commissioner of Social Security*, | ) ) ) | **AND ORDER** |
| Defendant. | ) ) |  |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When the government suspects that it has been defrauded, it takes action. While the plaintiffs might not have perpetrated the alleged fraud in this case, they arguably benefited from it. Thus, the government is making them demonstrate they are still entitled to benefits. The plaintiffs—and probably the public—do not understand why the government is taking action against them and not the "alleged" fraudsters. The Court understands this frustration. But this frustration does not allow the Court to ignore controlling law requiring the plaintiffs to pursue remedies within the agency first. As such, the plaintiffs' motion for reconsideration must be denied.

## BACKGROUND

The facts of this case are discussed in-depth in the Court's previous order, so a brief summary suffices here. *See* R. 33. In 2015, the Social Security Administration ("SSA") received an Office of Inspector General report suggesting that four doctors who performed

examinations for lawyer Eric Conn's clients submitted fraudulent evidence to support the clients' applications for disability benefits. The SSA examined each application that contained this allegedly fraudulent evidence. The SSA disregarded the allegedly fraudulent evidence, as required by the Social Security Act, and looked at whether "substantial evidence" still supported a finding of disability for each claimant. For those claimants without substantial evidence, the SSA decided to conduct redetermination hearings. The SSA then notified each affected claimant about their hearing and told them that they should submit new evidence of disability to the SSA.

Some of Conn's clients who had received SSA benefits but were now subject to redetermination brought this suit. The plaintiffs asked this Court to stop the redetermination hearings or require the SSA to do certain things during the hearings. R. 11; R. 12. The SSA moved to dismiss, arguing the Court lacked jurisdiction because the plaintiffs had not exhausted their administrative remedies as the Social Security Act requires. R. 25. The doctrine of administrative exhaustion exists to prevent premature judicial interference in agency decisions. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 2 (2000). Under this doctrine, plaintiffs must first bring all legal attacks through the agency's administrative process before seeking relief in federal court. *Id.* at 12–13. The courts, therefore, have jurisdiction to review an SSA decision only if the "Commissioner" has made a "final decision." 42 U.S.C. § 405(g); *see also id.* § 1383(c)(3). The Commissioner had not yet made a final decision with respect to the plaintiffs' benefit claims here, and thus the Court held that the plaintiffs had not exhausted their administrative remedies. Nor did the plaintiffs qualify for one of the exceptions to the exhaustion requirement. R. 33. Hence the Court held that it did not have jurisdiction. *Id.*

The plaintiffs have now filed a motion in which they ask the Court to alter or amend its previous order and judgment.  R. 35.  Under Federal Rule of Civil Procedure 59(e),[1] a court may grant such motions if there is a "clear error of law," newly discovered evidence, a change in controlling law, or if amendment or alteration is necessary to prevent "manifest injustice."  *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  The plaintiffs do not offer any novel evidence, nor do they contend that the law has changed. Instead, their primary argument is that the Court made several mistakes which, in their view, constitute clear errors of law.  They also suggest—albeit indirectly—that the Court must alter the judgment to avoid a manifest injustice.

### I.      The Court does not have jurisdiction even if the claimants cannot challenge the SSA's decision to reopen their cases during the redetermination hearings.

The plaintiffs first argue that the Court clearly erred when it held that the plaintiffs did not quality for an exception to the administrative exhaustion requirement.  Specifically, the plaintiffs want to challenge the SSA's decision to reopen their cases based upon the suspicion of fraud.  They contend that the SSA will not let them do that.  For example, they say that the SSA prohibits them from re-submitting evidence from the four doctors who allegedly submitted fraudulent evidence.  As a result, in their view, the SSA's decision to redetermine their eligibility in the first place is "shielded" or "immun[e]" from judicial review.  R. 35-1 at 5.  The plaintiffs allege that they will be harmed if they erroneously lose their benefits without a chance to challenge the SSA's decision to reopen their files in court. Thus, they conclude, the Court clearly erred when it held that it could not waive administrative exhaustion and review the SSA's decision to reopen the plaintiff's cases now.

---

[1] The plaintiffs' motion references Rule 59(c).  R. 35.  The Court assumes they intended to cite Rule 59(e).

As an initial matter, the plaintiffs have their facts wrong: the SSA's decision to redetermine their eligibility is not "shielded" from judicial review entirely.  After all, the plaintiffs will eventually be able to challenge that decision in court; they just cannot do so now.  Specifically, the plaintiffs can obtain judicial review of the SSA's decisions *once they have exhausted the SSA's internal appeals process.  See Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611 (6th Cir. 2010) (claimant challenged SSA's decision to reopen his case after a final decision denying him benefits); *Wyatt v. Barnhart*, 349 F.3d 983 (7th Cir. 2003) (claimant challenged SSA's decision to reopen his case after a final decision).  In both *Wyatt* and *Ferriell*, the SSA decided to reopen the claimants' initially favorable decision and eventually deny their benefits.  After the claimants appealed the decisions within the SSA and received "final decisions" affirming the denials, the federal district court—and the Court of Appeals— evaluated the SSA's decisions to reopen the claimants' cases.  *Ferriell*, 614 F.3d at 613–14; *Wyatt*, 349 F.3d at 984.  In *Wyatt*, the Seventh Circuit remanded the case to the SSA with specific instructions to reinstate the Administrative Law Judge's ("ALJ") original decision granting him benefits.  *Id.*  The *Ferriell* court, however, affirmed the SSA's decision. *Ferriell*, 614 F.3d at 621–22.  These cases show that the SSA's decision to redetermine a claimant's eligibility is not shielded from judicial review; judicial review is merely postponed.  Thus, the plaintiffs here will eventually be able to challenge the SSA's decision in court.

Moreover, the plaintiffs are not entitled to premature judicial review merely because the SSA is not allowing them to challenge the decision to reopen during the SSA appeals process.  "The fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one, is beside the point" when determining whether

exhaustion is required.  *See Ill. Council*, 529 U.S. at 23 (internal citations omitted).  The plaintiffs "remain free," after the SSA appeals process, "to contest in court the lawfulness of any regulation or statute upon which an agency determination depends."  *Id.*  Indeed, as *Wyatt* and *Ferriell* show, a court reviewing a final benefit decision has adequate authority to resolve any statutory or constitutional contention that the agency does not or cannot resolve. *See Ill. Council*, 529 U.S. at 23–24.  So even though the plaintiffs have been foreclosed from challenging the SSA's decision to reopen their cases during the redetermination hearings, they may still obtain judicial review of their claims *after* they complete the SSA's appeals process.  Thus, the plaintiffs fail to show a clear error of law.

## II.    The plaintiffs' claims are not "entirely collateral" to their claims for benefits.

Second, the plaintiffs argue that the Court clearly erred when it held that their claims were not "entirely collateral" to their claims for benefits.  As discussed in the previous opinion, courts may waive the exhaustion requirement when (a) a plaintiff's claim is "entirely collateral" to—*i.e.*, separate from—his substantive claim for benefits *and* (b) he raises a "colorable claim" that erroneous termination would damage him in a way that retroactive payments could not correct.  *Bowen*, 476 U.S. at 483; *see Ill. Council*, 529 U.S. at 15; *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 359 (6th Cir. 2000); *see also Oakland Med. Grp., P.C. v. Sec. of Health and Human Servs.*, 298 F.3d 507, 510 (6th Cir. 2002).

The plaintiffs devote substantial attention to discussing whether their claim that they would be damaged was a "colorable" one.  Indeed, they argue persuasively that erroneous termination would in fact damage them in ways retroactive payments could not correct. Specifically, they state that some of them would be harmed because their benefits would be

wrongfully denied and they would need to wait until their appeals are exhausted to get relief. Of course, it seems unfair to grant an individual benefits, take them away, and then give them back only months or years later.  As discussed above, however, the plaintiffs must show more than harm alone before the Court may waive administrative exhaustion.  *See Cathedral Rock*, 223 F.3d at 364.  The plaintiffs must also show that their claims are "entirely collateral" to their substantive claims for benefits.

Claims are entirely collateral when they are completely separate from substantive claims for benefits.  *See Cathedral Rock*, 223 F.3d at 363.  The plaintiffs argue that the Court incorrectly found that their new claims were not "completely separate" from their substantive claims.  *See* R. 33 at 5 (Court's previous order, citing *Cathedral Rock*, 223 F.3d at 363). Their claims are "process"-based, they say, and are therefore entirely collateral to their substantive claims for benefits.  R. 35-1 at 10.  The plaintiffs' claims can be construed two ways.  First, they are asking the Court to make the ALJs consider the allegedly fraudulent evidence from the four doctors and make an independent credibility determination of that evidence during their hearings.  Second, they are asking the Court to rule on whether the SSA rightfully reopened their cases for redetermination before they have exhausted their administrative remedies.  The plaintiffs argue that they are not challenging the SSA's decision about whether they deserve benefits, and thus their challenges are entirely collateral.

It is true that the plaintiffs are not challenging the outcome of a final benefit decision: *e.g.*, a decision to grant or deny disability benefits.  But even though they are not challenging final benefit decisions, their claims are still not "entirely collateral."  The case law defines very narrowly what types of claims are "entirely collateral."  *See BP Care, Inc. v. Thompson*, 398 F.3d 503, 511 (6th Cir. 2005).  No "broad exception [to administrative exhaustion] exists

6

for facial constitutional and statutory challenges to agency administration." *Mich. Ass'n of Homes & Servs. for Aging, Inc. v. Shalala*, 127 F.3d 496, 500 (6th Cir. 1997); *see also Ill. Council*, 529 U.S. at 23; *Heckler v. Ringer*, 466 U.S. 602, 615–16 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 760 (1975). In fact, "[a]ll aspects of any such present or future claim [to benefits] must be 'channeled' through the administrative process." *See Ill. Council*, 529 U.S. at 13 (citation omitted). Challenges to evidentiary rules at administrative hearings are not open to premature collateral attack. *See id.* Thus, the Court cannot grant the plaintiffs' first ask—that it mandate that ALJs consider the allegedly fraudulent evidence during SSA hearings. Furthermore, mandating that the SSA allow the plaintiffs to resubmit the allegedly fraudulent evidence goes against Congress's specific requirements. The same statute that requires the SSA to reopen case files based upon suspicion of fraud also requires the SSA to "disregard any [suspected-fraudulent] evidence" when redetermining the claimant's eligibility. 42 U.S.C.A. § 405(u)(1)(B). The Court cannot contravene Congress's wishes under these circumstances.

The plaintiffs' second ask—that the Court decide now whether the SSA's decision to redetermine their eligibility was lawful—is not entirely collateral. If favorable resolution of the plaintiffs' claims would mean entitlement to benefits, the claims are not entirely collateral. *See Cathedral Rock*, 223 F.3d at 363 (holding that the plaintiff's claim was not "entirely collateral" where favorable resolution of claim would result in reinstatement of Medicare provider agreement). Here, as the Court previously discussed, resolution of this claim in the plaintiff's favor would mean continued entitlement to benefits. Specifically, if the Court invalidated the SSA's decision to redetermine the plaintiffs' eligibility, their

disability benefits would continue.  Thus, the plaintiffs' claims in this lawsuit are not entirely collateral to the benefit claims themselves.

In response, the plaintiffs cite a case from the Northern District of California that they claim supports their argument.  *Kevin Hart, et al. v. Carolyn Colvin*, No. 3:15-cv-00623 (N.D. Cal. July 17, 2015), D.E. 36.  The *Hart* plaintiffs, some of whom had not exhausted their administrative remedies, sued the SSA for continuing to rely on a doctor who conducted sham examinations.  *Id.* at 4–5.  The *Hart* plaintiffs wanted to enjoin the SSA from relying on his reports and to require the SSA to reopen prior decisions denying benefits based on his reports.  *Id.* at 4.  *Hart* held that the plaintiffs "show[ed] that waiver of . . . exhaustion . . . [was] appropriate under the circumstances," and allowed them to proceed with the lawsuit. *Id.* at 12.  The plaintiffs argue that the situation here is similar to the one in *Hart*, and the Court erroneously reached a different result.  But the situation here is distinguishable from *Hart*.  Indeed, *Hart* perfectly illustrates the distinction between collateral and non-collateral claims.  The *Hart* court ruled that the plaintiffs' challenge to the policy was entirely collateral.  If the court granted the *Hart* plaintiffs' requested relief—reopening of the cases for redetermination—the plaintiffs' "ultimate entitlement to benefits w[ould] still be unknown."  *Id.* at 8.  In this case, however, relief would be outcome determinative.  As stated above, if the Court invalidated the SSA's decision to redetermine the plaintiffs' eligibility, their disability benefits would continue.  Unlike in *Hart*, the Court here would be "interfering with the agency's role as the ultimate determiner of eligibility."  *Bowen v. City of New York*, 476 U.S. 467, 485 (1986); *see also Cathedral Rock*, 223 F.3d at 363 (claim was not "entirely collateral" where the court's relief would mean reinstatement of the challenged agreement). Therefore, *Hart* does not help the plaintiffs' cause here.

In summary, the Court can waive administrative exhaustion only if the plaintiffs show two things: that they would be harmed by wrongful termination of their benefits, and that their claims are entirely collateral.  They have shown the former, but not the latter.  The Court is not at liberty to ignore the law.  And thus the Court cannot waive administrative exhaustion.

**III.      Administrative exhaustion is not futile here.**

The plaintiffs also argue that the Court clearly erred by not finding that administrative exhaustion was futile.   Administrative exhaustion is "futile" when the claimant "demonstrates that there [i]s nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989) (internal quotation marks omitted).  In support of that argument, they assert that many claimants will not be able to develop the administrative record because they will not be represented by competent lawyers at the redetermination hearings or during the SSA appeals process.  They assert that "[t]wo-thirds" of the claimants will likely "default due to lack of competent representation." R. 37 at 10–11.  Therefore, they argue, the Court gains little advantage from requiring administrative exhaustion.  *See, e.g.*, *Bowen*, 476 U.S. at 484 (citing the development of an administrative record as a reason why courts require exhaustion).

The plaintiffs' allegation of futility does not succeed.  Specifically, an alleged lack of competent lawyers at SSA hearings does not make administrative exhaustion futile.  Lawyers are not required at SSA disability hearings.  *Bagby v. Harris*, 650 F.2d 836, 839 (6th Cir. 1981).  The Court recognizes that administrative proceedings are undoubtedly harder without counsel.  However, that is why an ALJ has the responsibility for developing a record that is

"full and fair" when a claimant is not represented by counsel during a hearing. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). Therefore, the administrative record can still be developed—one of the reasons for administrative exhaustion—even if counsel is not present. Moreover, futility alone is not sufficient to justify an exception to administrative exhaustion. *See supra* Part II (listing cases stating two requirements to justify waiving exhaustion: that (a) claims must be entirely collateral *and* (b) a plaintiff must raise a colorable claim that retroactive benefits would not correct the harm); *see also Briggs*, 886 F.2d at 1139 (listing those two requirements *and* futility to justify waiving administrative exhaustion). The plaintiffs cite no authority to the contrary. Thus, any allegation that administrative exhaustion is futile here, even if proved, does not justify an exception to administrative exhaustion.

## IV.     Finally, the plaintiffs fail to demonstrate manifest injustice.

The plaintiffs imply that the harm they would suffer from 1) enduring the redetermination process without counsel and/or 2) erroneous termination of their benefits is so great that it rises to the level of "manifest injustice." No general definition of manifest injustice exists. *Banks v. Pugh*, No. 4:13CV2522, 2014 WL 4441470, at *2 (N.D. Ohio Sept. 9, 2014) (collecting and analyzing cases). "[A] showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that, without correction, would lead to a result that is both inequitable and not in line with applicable policy." *Id.* (analyzing cases). The Court recognizes that the plaintiffs' situation seems unfair. *See supra* Part II (stating that the plaintiffs raise a colorable claim that erroneous termination would harm them in a way retroactive benefits could not correct). But the plaintiffs have failed to show a "fundamental flaw in the court's decision" that is "not in line with applicable policy." *Id.* In

fact, the plaintiffs would be using Rule 59(e) as an end run around the two-part test for administrative exhaustion.   To justify waiving exhaustion, the plaintiffs—in addition to raising a colorable claim about harm—must also show that their claims are entirely collateral to their benefit claims.  The plaintiffs here fail the "entirely collateral" test.  The two-part test is not a balancing test, such that the weight of one prong reduces the need for the other.  The plaintiffs cite no case law in support of the proposition that the Court can overlook the "entirely collateral" requirement in the face of potential harm.  *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (stating that a Rule 59(e) motion is not an opportunity to reargue a case).  Therefore, the plaintiffs fail to show manifest injustice.

## CONCLUSION

The plaintiffs' arguments do not justify amending or altering the Court's previous order and judgment.  They do not show a clear error of law nor manifest injustice.  Nor do they show a change in controlling law or newly-discovered evidence justifying relief.  Accordingly, it is **ORDERED** that the plaintiffs' motion to amend/alter judgment, R. 35, is **DENIED**.

This the 1st day of April, 2016.

**Signed By:**

*Amul R. Thapar*

**United States District Judge**